UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
MICHAEL KOPANIC,                         :
                                          :   CASE NO.: _____
              Plaintiff,                 :
                                          :
       -against-                         :
                                          :
GTX, INC., ROBERT J. WILLS, MARC S.      :
HANOVER, J. R. HYDE III, MICHAEL G.      :
CARTER, J. KENNETH GLASS, GARRY A.       :
NEIL, and KENNETH S. ROBINSON,           :
                                          :
              Defendants.                :
---------------------------------------- X

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Michael Kopanic ("Plaintiff"), on behalf of himself, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.      This is an action brought by Plaintiff against GTx, Inc. ("GTx" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with GTx, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed merger of Oncternal Therapeutics, Inc. ("Oncternal") with GTx.

2.      On March 6, 2019, GTx, Oncternal, and Grizzly Merger Sub, Inc., a wholly-owned subsidiary of the GTx ("Merger Sub"), entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Merger Sub will merge with and into Oncternal, with Oncternal

1

surviving as a wholly-owned subsidiary of GTx (the "Proposed Transaction").

3. Under the terms of the Merger Agreement, each outstanding share of Oncternal common stock will be converted into the right to receive approximately 0.4474 shares of GTx's common stock (the "Merger Consideration"). However, if the Proposed Transaction is consummated, former Oncternal shareholders immediately before the closing of the Proposed Transaction are expected to own approximately 75% of the outstanding capital stock of GTx, while GTx's current shareholders are only expected to own approximately 25% of the outstanding capital stock of GTx.

4. On April 8, 2019, in order to convince GTx's public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for GTx and Oncternal; (ii) the background process leading up to the execution of the Merger Agreement; and (iii) potential conflict of interests affecting certain members of the Board.

6. The special meeting of the Company's shareholders to vote on the Proposed Transaction is quickly approaching. It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the special meeting of GTx shareholders so Plaintiff can properly exercise his corporate voting rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Plaintiff and

GTx's public common shareholders sufficiently in advance of the special meeting of the Company's shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, GTx's common stock is listed and traded on the Nasdaq Capital Market, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.    Plaintiff is, and has been continuously throughout all times relevant hereto, the

holder of GTx common stock.

12. Defendant GTx is a Delaware corporation that maintains its principal place of business at 17 W Pontotoc Ave., Suite 100, Memphis, Tennessee 38103. GTx's common shares are traded on the Nasdaq Capital Market under the ticker symbol "GTXI."

13. Defendant Robert J. Wills is, and has been at all relevant times, a director of the Company.

14. Defendant Marc S. Hanover is, and has been at all relevant times, a director of the Company.

15. Defendant J. R. Hyde III is, and has been at all relevant times, a director of the Company.

16. Defendant Michael G. Carter is, and has been at all relevant times, a director of the Company.

17. Defendant J. Kenneth Glass is, and has been at all relevant times, a director of the Company.

18. Defendant Garry A. Neil is, and has been at all relevant times, a director of the Company.

19. Defendant Kenneth S. Robinson is, and has been at all relevant times, a director of the Company.

20. The defendants identified in paragraphs 13 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with GTx, the "Defendants."

<u>SUBSTANTIVE ALLEGATIONS</u>

**Background of the Company and the Proposed Transaction**

21. GTx is a biopharmaceutical company dedicated to the discovery, development and commercialization of medicines to treat serious and/or significant unmet medical conditions.

Under an exclusive worldwide license agreement with the University of Tennessee Research Foundation, or UTRF, GTx is developing UTRF's proprietary selective androgen receptor degrader, or SARD, technology, which it believes has the potential to provide compounds that can degrade or antagonize multiple forms of androgen receptor, or AR, thereby potentially inhibiting tumor growth in patients with progressive castration-resistant prostate cancer, or CRPC, including those patients who do not respond to or are resistant to current androgen targeted therapies.

22.     Oncternal is a clinical-stage biopharmaceutical company focused on developing a diverse pipeline of product candidates for cancers with critical unmet medical need.  Oncternal's development efforts are focused on promising, yet untreated biological pathways implicated in cancer generation or progression.  Receptor tyrosine kinase-like Orphan Receptor 1 ("ROR1"), is a growth factor receptor that is widely expressed on many tumors and whose overexpression has been correlated with poor prognosis, which activates pathways that lead to increased tumor proliferation, invasiveness and drug resistance.

23.     On March 6, 2019, the Board caused the Company to enter into the Merger Agreement.

24.     Pursuant to the terms of the Merger Agreement, each outstanding share of Oncternal common stock will be converted into the right to receive approximately 0.4474 shares of GTx's common stock.  However, if the Proposed Transaction is consummated, GTx's current shareholders' will experience significant dilution.  Indeed, former Oncternal shareholders immediately before the closing of the Proposed Transaction are expected to own **approximately 75%** of the outstanding capital stock of GTx, while the stockholders of GTx shareholders before the Proposed Transaction are expected to only own **approximately 25%** of the outstanding capital stock of GTx

25.     On March 7, 2019, GTx and Oncternal issued a joint press release announcing the

Proposed Transaction, which stated in relevant part:

**GTx and Oncternal Therapeutics Enter into Definitive Merger Agreement to Create Nasdaq-Listed Clinical-Stage Company Developing a Diverse Pipeline of Novel Cancer Therapies**

*— Merger will combine Oncternal's clinical stage oncology pipeline and expertise with GTx's preclinical Selective Androgen Receptor Degrader (SARD) program for castration-resistant prostate cancer*

*— Conference call to be held today at 8:30 a.m. Eastern Time/5:30 a.m. Pacific Time —*

**MEMPHIS, Tenn. and SAN DIEGO, Calif. — March 7, 2019 —** GTx, Inc. (Nasdaq: GTXI) and Oncternal Therapeutics, Inc., a privately held clinical-stage biotechnology company developing potential first-in-class therapeutic candidates for cancers with critical unmet medical need, today jointly announced that they have entered into a definitive merger agreement under which the stockholders of Oncternal would become the majority owners of GTx's outstanding common stock. The proposed merger will create a publicly-traded, clinical-stage oncology company.

- Oncternal's lead program, cirmtuzumab, is an investigational, potential first-in-class anti-ROR1 monoclonal antibody. Cirmtuzumab is currently in a Phase 1/ 2 clinical trial in combination with ibrutinib for the treatment of chronic lymphocytic leukemia (CLL) and mantle cell lymphoma (MCL). In addition, an investigator-initiated Phase 1 clinical trial of cirmtuzumab in combination with paclitaxel for women with metastatic breast cancer is being conducted at the University of California San Diego (UC San Diego).
- TK216, an investigational, potential first-in-class small molecule designed to inhibit the biological activity of ETS-family transcription factor oncoproteins, is being evaluated alone and in combination with vincristine in a Phase 1 clinical trial in patients with relapsed or refractory Ewing sarcoma.
- A ROR-1 targeted chimeric antigen receptor T-cell (CAR-T) program is in preclinical development at UC San Diego for hematologic and solid tumors.
- A Selective Androgen Receptor Degrader (SARD) program, an investigational, potential first-in-class preclinical program designed for oral administration to treat castration-resistant prostate cancer in men who are non-responsive to current androgen targeted therapies.

Cash, cash equivalents and short-term investments for the combined

company are expected to be approximately $26 million, if the merger closes by the end of the second quarter of 2019. These funds are expected to be sufficient to advance Oncternal's programs into the second quarter of 2020, including the Phase 2 study of cirmtuzumab and ibrutinib, and will fund the planned SARD preclinical studies to support the submission of an investigational new drug application with the U.S. Food and Drug Administration.

James Breitmeyer, MD, PhD, cofounder, president and CEO of Oncternal and a 30-year veteran of the pharmaceutical industry, will continue as president and CEO of the combined company. David Hale, cofounder of Oncternal and a 35-year veteran of numerous successful private and public biotech companies, will continue as Chairman of the Board of the combined company.

"This merger introduces Oncternal and its promising oncology pipeline to the public market and provides additional capital resources to advance our programs to potential value inflection points," said Dr. Breitmeyer. "In addition to clinical data expected from our cirmtuzumab and TK216 programs later this year and during the first half of 2020, we also plan to have preclinical results that get us ready for clinical testing of our ROR1 CAR-T program. The addition of GTx's SARD technology strengthens our pipeline and augments our entire oncology franchise, which includes a range of therapeutic approaches for a variety of difficult to treat cancers."

"This transaction with Oncternal reflects the continued commitment of our management team and Board of Directors to deliver value to stockholders and make a difference in patients' lives," said Robert J. Wills, PhD, Executive Chairman of GTx. "Following a thorough review of strategic alternatives, we have determined that a reverse merger with Oncternal will enable GTx investors to participate in Oncternal's broader pipeline of oncology opportunities, including product candidates designed to address rare disease indications, and enable the continued development of our first-in-class SARD technology by a company whose leadership has deep experience in developing oncology medicines."

**About the Proposed Merger**

The merger is structured as a stock-for-stock transaction whereby all of Oncternal's outstanding shares of common stock and securities convertible into or exercisable for Oncternal's common stock will be converted into GTx common stock and securities convertible into or exercisable for GTx common stock. Immediately following the closing of the transaction, the former stockholders of Oncternal will hold approximately 75% of the outstanding shares of common stock of the combined company. In addition to retaining an

ownership interest representing approximately 25% of the outstanding shares of common stock of the combined company, the GTx stockholders of record as of immediately prior to the effective time of the merger will receive non-transferable contingent value rights ("CVR") entitling the holders to receive in the aggregate 50% of any net proceeds derived from the grant, sale or transfer of rights to SARD or selective androgen receptor modulator (SARM) technology during the term of the CVR and, if applicable, to receive royalties on the sale of any SARD products by the combined company during the term of the CVR. Under certain circumstances further described in the merger agreement, the exchange ratio of the outstanding shares of common stock of the combined company may be adjusted upward or downward based on cash levels of each of the companies at closing.

Upon closing of the transaction, GTx will be renamed Oncternal Therapeutics, Inc. and will be headquartered in San Diego, California under the leadership of Oncternal's current management team. Although no GTx employee is expected to remain an employee of the combined company, the merger agreement provides that the Board of Directors of the combined company will be comprised of nine members, including seven designated Oncternal directors as well as Robert J. Wills, PhD and Michael G. Carter, MD, from GTx's current Board. The combined company is expected to trade on The Nasdaq Capital Market under a new ticker symbol, ONCT. The merger agreement has been unanimously approved by the Board of Directors of each company. The transaction is expected to close in the second quarter of 2019, subject to approvals by stockholders of each company and other customary closing conditions.

Aquilo Partners, L.P. is acting as exclusive financial advisor to GTx on the proposed transaction and Cooley LLP serves as legal counsel to GTx. Piper Jaffray is acting as exclusive financial advisor to Oncternal on the proposed transaction and Latham & Watkins, LLP serves as legal counsel to Oncternal.

**The Proxy Omits Material Information**

26. On April 8, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting

8

decision in connection with the Proposed Transaction.

27. First, the Proxy fails to provide sufficient information regarding financial projections for GTx and Oncternal.

28. Specifically, the *GTx Reasons for the Merger* section of the Proxy lists several factors that were considered when evaluating the Merger Agreement and Proposed Transaction. **The first reason listed** states that the Board, GTx management, GTx's outside legal counsel, and GTx's financial advisor, Aquilo Partners, L.P. ("Aquilo"), all reviewed and assessed "*GTx's business, operational and **financial prospects**…*" Proxy at 133.

29. Furthermore, the *Opinion of the GTx Financial Advisor* section of the Proxy states that Aquilo reviewed and analyzed the following information when reaching its opinion that the Proposed Transaction was "fair" to GTx shareholders:

> - *certain non-public information relating to GTx that was prepared and provided to Aquilo by GTx, including certain operating and financial information relating to GTx's business*, including GTx's unaudited financial statements for the year ended December 31, 2018 ***and financial and business forecasts and projections prepared by management of GTx relating to GTx's prospects***; [and]
> - *certain non-public information relating to Oncternal that was prepared and provided to Aquilo by Oncternal, including certain operating and financial information relating to Oncternal's business*, including Oncternal's unaudited financial statements for the year ended December 31, 2018 ***and financial and business forecasts and projections prepared by management of Oncternal relating to Oncternal's prospects***[.]

*Id.*

30. However, the Proxy fails to disclose *any* of the financial projections for GTx and Oncternal.

31. Numerous courts have championed the importance of management based financial projections because a company's management has unique insight into their firm's future that the market does not. Shareholders cannot hope to replicate management's inside view of the

9

Company's prospects. The established case law shows the importance (and, hence, materiality) of financial projections to shareholders' decision-making.

32. Additionally, perhaps nothing is more relevant to a vote on whether or not to approve a merger than the *earnings picture of the acquiring company (i.e.,* Oncternal) to the shareholders of the company being acquired (*i.e.,* GTx).

33. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—**but it may not choose half-truths**.

34. Defendants have concerningly elected to withhold the projections that the Board, GTx management, GTx's outside legal counsel, and Aquilo all reviewed and assessed when evaluating the Merger Agreement and Proposed Transaction was "fair" and in best interests of GTx and its shareholders. Accordingly, the omission of GTx and Oncternal's financial projections the Proxy materially incomplete and misleading.

35. Second, the Proxy omits material information concerning the sales process leading up to the Proposed Transaction.

36. Specifically, the Proxy states that GTx entered into confidentiality agreements with several interested parties, including, *but not limited to*, Company A, Company D, Company E, Company F, Company H, Company G, Company I, and Company L. *See* Proxy at 121-32 However, the Proxy fails to disclose whether *any* of the confidentiality agreements GTx entered into with interested parties contained standstill provisions and, if so, whether such standstill provision contained a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or still remain in effect. The failure to disclose the existence of DADW provisions creates the false impression that an interested party who signed a confidentiality agreement could have made a superior proposal. **But**

**that is not true.** If those confidentiality agreements contained DADW provisions, the interested potential acquirers could only make a superior proposal by breaching their respective agreement, because in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this information renders the references to the confidentiality agreements in the Proxy materially incomplete and therefore misleading as any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

37. Finally, the Proxy fails to disclose the timing and nature of negotiations concerning post-close employment for certain key individuals.

38. Specifically, the Proxy states on pages 286-87 that following the consummation of the Proposed Transaction, defendants Michael G. Carter and Robert J. Wills will be appointed to the combined company's board of directors.

39. However, the Proxy fails to specifically disclose the timing and nature of the negotiations concerning defendants Michael G. Carter and Robert J. Wills' post-close directorship.

40. Such information is material to GTx shareholders so that they may understand the conflicts of interest facing key members of the Board. The timing and nature of post-close employment provides key insight concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders, particularly when the individual in question actively participated in discussions concerning the sales process that ultimately resulted in the proposed merger. If a board member negotiated for their own interests ahead of shareholder compensation, shareholders would certainly find such information material. Accordingly, the omission of this information renders the statements made in the *Background of the Merger*, *Interests of GTx Directors and Executive Officers in the Merger*, and *Management Prior to and Following the Merger* sections of the Proxy materially incomplete and misleading.

41. Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

42. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming special meeting of the Company's shareholders, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

47. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for GTx and Oncternal; (ii) the background process leading up to the execution of the Merger Agreement; and (iii) potential conflict of interests affecting certain members of the Board.

48. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's common shareholders although they could have done so without extraordinary effort.

49. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Board, GTx management, GTx's outside legal counsel, and Aquilo all reviewed and assessed financial projections for GTx, and further states that the Board considered the fairness opinion provided by Aquilo and the assumptions made and matters considered in connection therewith, which included financial projections for GTx and

Oncternal.  Further, the Individual Defendants were privy to and had knowledge of the projections for the GTx and Oncternal and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

50.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

51.     GTx is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

52.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the special meeting of the Company's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of GTx within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of GTx, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

57. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their

15

input on the content of those descriptions.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and/or permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 11, 2019  **MONTEVERDE & ASSOCIATES PC**

By: */s/ Miles D. Schreiner*
Miles D. Schreiner (MS-2518)
The Empire State Building 350 Fifth Avenue, Suite 4405 New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*